# Metropolitan West Side El. R. R. Co. v. Peter C. Dick.

1. CORPORATIONS—*When Liable for the Acts of Its Contractors, Lessees, etc.*—A corporation is liable for the tortious acts of a third person, when such person is the servant of the company and acting under its direction; and though such person is not a servant as between himself and the company, but a contractor or lessee, still he must be regarded as a servant when he is exercising some chartered privilege of the company, with its assent, which he could not have exercised independently of its charter.

2. Same—*Responsibility of, in Accepting a Special Charter.*—A company seeking and accepting a special charter must take the responsibility of seeing that no wrong is done through its chartered powers by persons to whom it has permitted their exercise.

3. Negligence—*Of an Agent or Servant.*—If an agent or servant is guilty of negligence, resulting in an injury to another, in the performance of that which he was authorized to perform, the master or principal is liable to the injured party.

Appeal from the Criminal Court of Cook County; the Hon. John C. Garver, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 5, 1900.

**Statement by the Court.**—This is error to reverse a judgment rendered in favor of defendant in error against plaintiff in error in case, for alleged negligence. The suit was against plaintiff in error, the West Side Construction Company, the Milwaukee Bridge Company, the Carnegie Steel Company, Limited, and J. G. Wagner. The cause was dismissed as to the Milwaukee Bridge Company, and discontinued by the court, on its own motion, as to J. G. Wagner, for want of service. The jury found plaintiff in error guilty, and by direction of the court, found the Carnegie Steel Company and the West Side Construction Company not guilty. The jury assessed the plaintiff's damages at the sum of $5,000, and judgment was rendered for that sum.

Plaintiff in error was incorporated March 9, 1892, under the general railroad law to construct a railroad, the location of which is thus described in the articles of incorporation :

" Commencing at a point on the west shore of Lake Michigan, between the main branch of the Chicago river on the north, and Twelfth street, in the city of Chicago, county of Cook and State of Illinois, on the south; thence running in a westerly direction to the present limits of the town of Cicero, in said county and State, with a branch starting from the main line of said railroad, as above described, at a point on said main line between Jefferson street, in said city of Chicago, on the east, and Western avenue, in said city of Chicago, on the west, and running southerly and southeasterly to the present limits of the city of Chicago; and also with a branch starting from said main

line, at a point between the south branch of the Chicago river on the east, and Western avenue on the west, in said city of Chicago, and running northerly and northwesterly to the present city limits of the city of Chicago, with all necessary branches, switches, turntables, turnouts and curves along the line of the proposed railroad and the said branches thereof."

April 7, 1892, the city council of the city of Chicago passed an ordinance granting to the company the right to construct, maintain and operate, for a period of fifty years, an elevated railroad on certain lines designated in the ordinance, and over, along, upon and across such lots, lands and property as the company owned, or might thereafter acquire by lease, purchase, condemnation or otherwise; and also to cross, at an elevation, any and all streets, avenues, alleys, public places and railroad tracks, upon or along the line of the route designated in the ordinance.

April 25, 1892, the company entered into a written contract with Alfred F. Wolcott, by which he, Wolcott, agreed to procure the right of way for the road (the company to exercise its corporate rights and powers for that purpose, when requested), and also to equip the road. In consideration of Wolcott's agreement, the company agreed to pay to him, " or his assigns " an amount specified in the contract at the times and in the manner therein specified. The contract provided :

" All completed work shall, before delivery, acceptance and payment, be subject to examination and approval by the Railroad Company, by such engineer as may hereafter be mutually agreed upon by the parties hereto."

The number of miles on the main line and branches of the road is stated in the contract to be sixteen.

June 6, 1892, Alfred F. Wolcott, plaintiff in error consenting thereto, assigned their contract to the West Side Construction Company, a New Jersey corporation.

December 19, 1892, the West Side Construction Company made a contract in writing with the Carnegie Steel Company for the furnishing by the latter company of all the material and labor necessary to complete the steel superstructure of

the railroad in accordance with specifications attached to the contract, the work to be done " under the direction and inspection of the chief engineer of the Metropolitan West Side Elevated Railroad Company and of the company hereinafter named, the engineer, or of his assistants appointed to superintend the same, and to the full satisfaction and acceptance of the said engineer." Specifications of the work to be done were annexed to and made a part of the contract, and it was provided that the work should be done in strict conformity with such lines, levels, stakes, profiles, maps, plans and instructions as should from time to time be given by the engineer, or his assistants, for the guidance of contractors.

Alfred F. Wolcott, with whom plaintiff in error contracted, was the president of the West Side Construction Company, so that the contract with him was in effect a contract with the West Side Construction Company.

The Carnegie Steel Company made a contract with J. G. Wagner for the erection of the elevated structure.

Mr. Eckert was the engineer agreed on by plaintiff in error and the West Side Construction Company, and his sole business and all he did in the premises was to look over the work from time to time, as it progressed, and ascertain how much had been done, so that proper payments could be made, and neither Eckert, nor any officer or employe of plaintiff in error, exercised any supervision or control over the West Side Construction Company, or any of its sub-contractors, as to the manner in which the work should be done, or the employes whom they or either of them employed.

The main line of the road crossed Ogden avenue in the city of Chicago, and the part across that avenue was not fully completed until about August, 1893, up to which time the Carnegie Company or some of its sub-contractors were in possession of the structure at the crossing, and were working on it. July 21, 1893, while defendant in error was walking on the sidewalk on Ogden avenue under the elevated structure, a heavy piece of iron or steel, which two men, who were either in the employ of the Carnegie Com-

pany or the sub-contractors of that company, were moving, by means of a rope attached to each end of it, for the purpose of putting it in its proper place on the structure, fell on his foot and injured him. The piece of iron or steel which fell is described by the witnesses as a brace five or six feet long and weighing from twenty-five to fifty pounds. One witness says it weighed from twenty-five to forty pounds, another that it weighed in the neighborhood of fifty pounds. It fell from about the center of the structure.

Counsel for plaintiff in error say, in their argument:

"At the time of the accident, two employes of J. G. Wagner, the sub-contractor of the Carnegie Steel Company, were about to place in position the steel bar that fell. These men had a rope at each end of it, preparatory to fastening it in the structure."

The evidence is, that at the time of the accident there were no barricades or guards across the sidewalk to prevent people from passing under the structure, but a rope was placed across it the next day after the accident for that purpose. The falling brace or bar cut off substantially the big toe of defendant in error, and parts of his second and third toe. The big toe was amputated at the base, the second between the first and second joints, and the third at the first joint. Defendant in error was taken to the hospital, where he remained under treatment for eleven days, after which he was treated by a physician for four or five months. His treatment cost him about $260. He was about thirty-one years of age at the time of the accident, and until about twenty days prior to that time, was a detective sergeant of police at a salary of $1,200 per annum. He was unable to do any work after the injury for about twenty months.

IRA C. WOOD and ADDISON L. GARDNER, attorneys for plaintiff in error; W. W. GURLEY, of counsel.

JOHN P. AHRENS, attorney for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Counsel for plaintiff in error contest all right of recovery

on two grounds, viz.: First, that the negligence, if any, was the negligence of the servants of an independent contractor over whom, and over the manner of doing the work, plaintiff in error had no control; secondly, that the negligence in permitting the brace or bar to fall, was not a necessary or direct result of the work authorized, but was merely collateral thereto.

It is obvious from the preceding statement that very valuable and important privileges were granted to plaintiff in error by its charter and the ordinance of the city of Chicago. The charter and ordinance being accepted and acted on by plaintiff in error, the law imposed on it certain obligations to the public, corresponding to the privileges conferred. Had the plaintiff in error itself constructed its railway, without the intervention of a contractor, and by its immediate servants, under the superintendence and direction of its own engineer, and had an accident happened such as the one in question, there would be no doubt of its liability. Having the authority, by its charter and the ordinance, to construct its railway, by its immediate servants, and being liable for any injury which might result to the person or property of another by reason of its negligence in constructing it, the question is, whether it could relieve itself from all liability for negligence in the construction of its railway by contracting with another corporation or person to construct it. In considering this question, it must be borne in mind that the sole authority to construct the railway is that vested in plaintiff in error by its charter and the ordinance of the city. If any one engaged in the erection of the structure should be sued or prosecuted for creating a nuisance in one of the streets by erecting the railway over it, he could only justify by pleading the charter and ordinance vesting authority in plaintiff in error to construct the railway, and averring that he was acting in pursuance of authority from plaintiff in error.

In Lesher et al. v. The Wabash Navigation Co., 14 Ill. 85, the navigation company was authorized by its charter to enter on certain lands, including the lands of the plaint-

iffs in the action, and to take therefrom timber, stone and other materials necessary and proper for the construction of its works. The company made a contract with other parties to furnish, for a specified price, all the material for, and do all the work in the erection of a dam which, by its charter, it was authorized to erect. The parties with whom the company contracted entered upon the land of the plaintiffs, and took therefrom timber necessary and proper for the work, and used it in the work. The plaintiffs, the owners of the land, instituted proceedings against the navigation company to have their damages for the taking of the timber assessed, and the company defended on the ground that they had contracted, as heretofore stated, for the furnishing of material for the work for a specified price, and had paid the contractors. The court say :

" The contractors were none the less the servants of the company because they were doing the work by contract, and for a stipulated price. The work was still done by the company, and under the authority of their charter. The privileges which the charter conferred upon the company, to enable them to execute the work, devolved upon the contractors for the same purpose. The very erection of the dam across the river was an obstruction to its navigation and would have been unlawful but for the authority conferred by the charter."

The court further say, Ib. 87 :

" Had a cause of action accrued to an individual by reason of the obstruction erected in the river, the company whose work it was, would have been liable as much as if they had erected it with their own hands."

Hinde et al. v. Wabash Navigation Co., 15 Ill. 72, is a similar case and to the same effect. In that case the court say :

" Although contractors, they were, when exercising the rights conferred by the charter, the agents or servants of the company," etc.

In C., St. P. & Fond du Lac R. R. Co. v. McCarthy, 20 Ill. 385, the Railroad Company contracted with Page & Co. for the construction of its road. The contractors, in doing the work, entered on the land of the plaintiff, which

was on the line of the proposed road, and took down the fences at the points where the line of the road entered and left the land. They carelessly left the fences down while they were at work, in consequence of which cattle entered and damaged the growing crops of the plaintiff. The railroad company defended the action on the ground that the work was let to Page & Co., and that the negligence was that of their servants. Held, that this was no defense, the court saying:

" The contractors are the servants of the company, and authorized by law, being such servants, to enter upon the defendant's land and take down his fences, if necessary, but the company must be responsible for the consequences of the act. The contractors have no right there except through the grant to the company, and of course are the servants and agents of the company in doing that particular work. Their tortious acts are properly chargeable to the company."

In C., R. I. & Pac. R. R. Co. v. Whipple, 22 Ill. 105, the plaintiff's cattle were killed by a train operated by contractors who were engaged in constructing the railroad company's road. The court held the company liable, and after citing prior cases, say:

" It then follows that the responsibility of the appellants was the same, whether the road, at the time the injury was done, was being operated by themselves, their servants, agents, lessees or the contractors for its construction."

In West v. St. L., V., etc., R. R. Co., 63 Ill. 549, the rule is thus stated :.

" The principle we consider to be substantially this : The company must be held liable when the person doing the wrongful act is the servant of the company and acting under its direction, and though such person is not a servant, as between himself and the company, but merely a contractor or lessee, still he must be regarded as a servant or agent when he is exercising some chartered privilege or power of the company, with its assent, which he could not have exercised independently of the charter. In other words, *a company seeking and accepting a special charter, must take the responsibility of seeing that no wrong is done through its chartered powers by persons to whom it has permitted their exercise.*"

The last case is cited with approval, and the above quoted words in italics are quoted in Economic Fuel Gas Co. v. Myers, 168 Ill. 139, 147. The case first cited in this opinion was decided in 1852, and that last cited in 1897, so that for at least forty-five years the law of this State has been, that a contractor exercising the chartered power of a corporation, with its assent, must be regarded, in so far as the public and third persons are concerned, as the servant or agent of the corporation. In the present case, the work which was being done when defendant in error was injured, namely, the construction of the elevated structure across Odgen avenue, was work which plaintiff in error was authorized by its charter and the ordinance of the city of Chicago to do, and which could not, in the absence of such authority, have been lawfully done. Plaintiff in error not only assented to the doing of that work, but authorized it; those doing it were, according to the authorities cited, its servants or agents in doing the work; the injury occurred by reason of the negligence of such servants or agents in doing it, and the law that a master or principal is liable for injury occurring by reason of the negligence of his servant or agent in the performance of that which the master or principal authorized him to perform, is too well settled to require discussion. The Illinois court does not stand alone in the doctrine announced in the cases cited.

In Hole v. Sittingbourne & S. Ry. Co., 6 Hurls. & Norm. 488, 1861, the railway company was authorized by act of Parliament to construct a bridge across the Swale, a public navigable channel, but in such manner as not to detain any vessel navigating the channel longer than ten minutes. The company contracted with one Withers for the construction of its line of railway, including the bridge. Before the bridge had been turned over to the company, a vessel navigating the channel was detained at the bridge, because, owing to its imperfect construction, it could not be opened. There was a verdict for the plaintiff, which was sustained by the Court of Exchequer. Pollock, C. B., says:

"This is a case in which the maxim, ' *Qui facit per alium, facit per se,*' applies. When a person is authorized by act of Parliament, or bound by contract to do particular work, he can not avoid responsibility by contracting with another person to do that work," etc.

The company was held liable.

In Mercey Docks v. Harbor Board of Trustees, 1 Eng. & Irish Appeal Cases, 93, Mr. Justice Blackburn, delivering his opinion before the House of Lords, says :

" But though the legislature has authorized the execution of the works, it does not thereby exempt those authorized to make them from the obligation to use reasonable care that, in making them, no unnecessary damage may be done." Ib. 112.

The same justice, in his opinion, quoted the following from the opinion of Mr. Justice Williams in Pickard v. Smith, 10 C. B. (N. S.), 480 :

" Unquestionably no one can be made liable for a breach of duty unless it be traceable to himself or his servants or servant in the course of his or their employment. Consequently, if an independent contractor is employed to do a lawful act, and in the course of the work he or his servants commit some casual act of wrong or negligence, the employer is not liable. That rule, however, is not applicable in cases in which the act which occasions the injury is one which the contractor was employed to do; nor, by parity of reasoning, to cases in which the contractor is entrusted with the performance of a duty incumbent on his employer. If the performance of the duty be omitted, the fact of his having entrusted it to a person who also neglected it, furnishes no excuse, either in good sense or law." Ib. 114.

The other law lords, including the lord chancellor, concurred in the opinion of Mr. Justice Blackburn. The question is very ably discussed by Dwight, J., in McCafferty v. Railway Co., 61 N. Y. 178, and many authorities cited.

That there are cases contrary to the views expressed in this opinion, must be admitted; but in view of the Illinois decisions cited, and which we think supported by the better reason, we think the question of the liability of a corporation for the negligence of its contractor, in the performance of work authorized by the charter of the corporation, and

which the corporation authorized the contractor to perform, *res adjudicata* in this State.

While it is not, and indeed, can not, consistently with the evidence, be contended that the men engaged in the work were not performing work which was authorized to be done by the charter of plaintiff in error and the city ordinance, namely, attempting to place in position in the elevated structure the brace which fell and injured defendant in error, and while it is not contended that the permitting the brace to fall was not negligence, it is urged that the negligence was not a direct result of the work authorized, but was merely collateral thereto, and therefore there can be no recovery. If this proposition is sound in law, then no recovery can ever be had on account of injury resulting from the negligence of a servant or agent in the performance of an act which he was authorized by his master or principal to perform, because negligence is never authorized by master or principal. The proposition is utterly untenable. The law is that if the agent or servant is guilty of negligence resulting in injury to another, in the performance of that which he was authorized to perform, the master or principal is liable to the injured party.

In C., St. P. & Fond du Lac R. R. Co. v. McCarthy, *supra*, the contractors were authorized both by the charter and the railroad company to construct the railroad through the plaintiff's land, and, by necessary implication, to take down the fences. They were not, however, authorized to carelessly leave them down during most of the time they were at work, which they did. Yet it was held that the negligence of the contractors was tortious, and the railway company responsible. We think further discussion of this question superfluous.

It is claimed that the damages are excessive. The trial was fairly conducted, and although, if sitting as jurors, we might have awarded a less sum as damages, yet we can not, from the mere amount of the sum awarded, infer that the jury were influenced by any improper motive or consideration, in assessing the damages.

Counsel for plaintiff in error object to the third instruction for defendant in error, on the ground that it informed the jury that the servants of Wagner, who were engaged in working on the structure at the time of the accident, must be considered, as to the public, the servants of plaintiff in error. We have already held this to be the law.

The judgment will be affirmed.