## Chicago Bridge & Iron Company v. Joseph La Mantia, Admr.

### Gen. No. 11,104.

1. NOMINAL DAMAGES—*what essential to recover more than.* In an action for death caused by the alleged wrongful act of the defendant, nothing more than nominal damages can be recovered where it is not shown that the next of kin left by the deceased sustained pecuniary loss by his death, unless the relation of husband and wife or parent and child existed between the deceased and such next of kin, in which case pecuniary loss is presumed of law.

2. PECUNIARY LOSS—*what does not establish.* In an action for death caused by the alleged wrongful act of the defendant, where the deceased

left a brother and two sisters, pecuniary loss to them is not established by evidence merely to the effect that to one brother, a dwarf, the deceased was in the habit of sending money, it not appearing for what purpose such money was sent.

3. DEATH BY WRONGFUL ACT—*how right of recovery for, construed.* The right to recover where death has resulted from the wrongful act of the defendant was unknown to the common law, is the creature of statute, and, therefore, subject to a strict construction.

4. INDEPENDENT CONTRACTOR—*when rule of, does not apply.* This rule does not apply where the contract in question in the case necessarily caused the obstruction and incumbrance of a public highway and rendered it unsafe for public travel. (M. W. S. Ry. Co. v. Dick, 87 Ill. App. 40, followed.)

Action for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the March term, 1903. Reversed and remanded. Opinion filed January 25, 1904.

**Statement by the Court.** Appellant entered into a written contract May 8, 1899, with the Sanitary District of Chicago for the building of a bridge over the river at Taylor street, in the city of Chicago. By this contract appellant agreed to give its personal attention to the work, not to sublet any part of it, and to pay all legal damages sustained by any person in consequence of any negligence in guarding the same while in the course of construction.

The fact was that appellant sublet the construction of this bridge to The Kelly-Atkinson Construction Co., and it, appellant, did nothing more than to furnish the structural iron, having nothing to do with putting the iron in place, or in supervising any of the work. This bridge is a rolling lift bridge, which opens in the middle, the ends rising up to permit vessels to go through, thus utilizing the entire width of the channel. In order not to impede navigation while the bridge was in process of construction, each half of the bridge was built upon its foundation vertically, as a house is constructed. Next west of the west lift or half of this bridge, a viaduct, about twenty feet above street level at the river end, ran to the west with a down grade until it reached the street level a block away.

The night of the accident the west lift stood in a vertical

Chicago Bridge & Iron Co. v. La Mantia.

position, eighty-five feet high. It was not completed and hence had never been lowered. The viaduct for from thirty to forty feet back from the lift was partially covered with timber, iron and stone used in and about the construction of the bridge. Nearly fifty feet west of the lift in the middle of the floor of the viaduct, a hole two by six feet had been cut, in which a derrick used in the work had once stood, but before that night it had been removed, and this hole was left uncovered. From the evidence it seems one could come up the viaduct toward the bridge to or near to this hole, without encountering any gates or bars or other serious obstructions. It also appears that there were three ways in which one could get to a point directly under this hole without going up the viaduct.

The deceased was a laborer forty-nine years old, an Italian, and unmarried. He had been in this country nine years. The evidence tends to show that he was a sober man with good eyesight. He lived northwest of this bridge about five blocks. At eight o'clock in the evening of September 16, 1900, he and some friends came north on a Halsted street car from Eighteenth street to Taylor street. They there left the car and walked east on Taylor street to Desplaines, which brought them within three blocks of the bridge. There the party separated, the deceased saying, " I am going back," and then started by himself toward the east. At 10:30 of that evening his dead body was found lying upon some iron counterweights under this hole in the viaduct. His ribs were fractured, and he died from external violence.

The jury found appellant guilty and assessed the damages of appellee at the sum of $3,500. Judgment was entered upon the verdict. Appellant brings the case to this court.

Eddy, Haley & Wetton, for appellant; Clyde A. Morrison and Charles H. Fegler, of counsel.

Edmund S. Cummings, for appellee.

Mr. Justice Ball delivered the opinion of the court.
The declaration sets up that the deceased left him sur-

viving a sister and two brothers. The evidence tends to show that the deceased sent money to his brother Salvator in Italy in small amounts aggregating from $80 to $100 per year. Appellee, who is the only witness who pretended to know anything of his own knowledge about Salvator, says: "His brother is in the old country. He cannot do anything. * * * He is a dwarf, you know, what they call a dwarf, a small man. He is about three feet high." This evidence is insufficient to sustain a verdict for more than nominal damages. There is here no proof of dependency shown. The record is silent as to what was done with this money when it reached Salvator. We are not informed whether he used it for his necessary support, or invested it for the deceased to await his return to the land of his birth. For all this record discloses, Salvator may be head of the La Mantia family, its adviser and its treasurer. Neither does the evidence show that Salvator is not wealthy in his own right, or is not a successful business man. The mere fact that he is a small man, about three feet high, proves nothing on either side of this contention. What the witness means by "He cannot do anything." when read with its context, is too uncertain to be the foundation of a judgment for $3,500. It devolved upon appellee not only to show that the deceased left kindred surviving him, but also to prove that they suffered pecuniary loss by reason of his death. The right of recovery sought in this case is unknown to the common law. Hence, under a well established canon of interpretation, the right created by the statute must be strictly construed. R. S., sec. 2 of ch. 70, granting this right, reads: "And in every such action the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person." This language gives the jury a large discretion as to the amount of the damages in a proper case; but it places upon the plaintiff, except in those instances where the relation of husband and wife or parent and child exists, the burden of showing affirmatively that

Chicago Bridge & Iron Co. v. La Mantia.

the next of kin suffered "pecuniary injuries" by reason of such death. Unless such proof be made, nominal damages only can be given. North Chicago St. Ry. Co. v. Brodie, 156 Ill. 317; C., B. & Q. Ry. Co. v. Gunderson, 174 Ill. 499.

The court below, under the evidence offered, did not err in its refusal to find the defendant not guilty. As this case must be sent back to the trial court, we will not discuss its merits. It is sufficient to say that there is evidence in this record tending to prove that the deceased was in the exercise of reasonable and ordinary care at the time of his injury; and that such injury was caused by the wrongful act, neglect or default of appellant.

It is further contended by appellant that as it did not erect this bridge, did not have control of or supervision over the men engaged in the work, and did nothing more than to supply the steel structure to the Kelly-Atkinson Company, and as that company did all the work in its own way and according to its own judgment, it, and not appellant, is liable in this action, if any liability exists. The statement of facts shows that in its contract with the Sanitary District appellant stipulated it would pay all damages for personal injuries resulting from its wrongful acts or from the wrongful acts of any of its employees. The work to be done under this contract necessarily obstructed and encumbered the public highway and unavoidably rendered that highway unsafe for public travel. In such a case the generally understood doctrine of "independent contractor" does not apply. The rule which governs is this : the case is to be viewed and the liability is to be determined as it would be if the work had been done by appellant, and not by the subcontractor. We are committed to this rule by the opinion in Met. W. S. Ry. Co. v. Dick, 87 Ill. App. 40. Without further comment we adhere to the rule as there laid down. In so holding we are in accord with the Supreme Court of the United States. Water Co. v. Ware, 16 Wall. 566.

The judgment of the Circuit Court is reversed and the cause is remanded.

*Reversed and remanded.*